UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.  15cr10146-FDS |
| | ) | |
| WILLIE BERRY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER**

The United States of America hereby moves this Court for a protective order in this case (which includes all five of the related indictments before this Court) limiting the disclosure/dissemination of global discovery materials, including providing copies of discovery materials to defendants.  The government has prepared a Protective Order to which a number of defendants have assented; this order is attached as an exhibit hereto.  These defendants will be provided with initial discovery pursuant to the Protective Order.  Other defendants have refused to assent to the Protective Order.  Given the nature of this case, which involves violent street gangs and defendants with violent records, the proposed Protective Order is clearly merited in order to prevent intimidation and/or retaliation targeting potential witnesses and/or potential cooperators.

As the Court is aware from the proceedings in this case, the charges against the defendants arise out of an investigation of the Columbia Point Dawgs street gang and related criminal associates.  The gang, through its members/associates, has been involved in violent activities for decades including shootings and murders.  In this regard, many of members/associates of the Columbia Point gang have violent criminal histories and convictions for the illegal possession of firearms.  For example, defendant Demetrius Williams, a leader

within the gang, has pled guilty to both federal and state firearms charges and is pending sentencing.[1] Williams' brother, Yancey, who is also a defendant in this case, is presently facing state charges based on a shooting involving two victims. Yancey Williams' two co-defendants in the state shooting case are Louis Whitehead[2] and Arthur Williams, who are both defendants in this case and Columbia Point gang members. As another example of the violent nature of the criminal enterprises at issue in this case, this Court was presented with testimony that Aaron Bloudson, another defendant in this case and a Columbia Point member/associate[3], was intercepted discussing with Demetrius Williams shooting rival gang members who had been *observed at a state courthouse*.

As further evidence of the danger presented by the defendants in this case, a number of defendants were found to have firearms at their residences/associated locations at the time of their arrests in mid-June. For example, defendant Tony Berry, a leader in the Columbia Point gang, had 3 illegal handguns at his residence in Georgia. Defendant Derron Funches had 2 handguns at a residence that he used. Defendant Larry Bailey had 4 handguns at his residence, along with close to a million dollars in currency. Defendant Anthony Coplin had 2 handguns, ammunition for a third handgun, and several kilograms of cocaine in a safe at a business location from which he distributed kilograms of cocaine to other Columbia Point gang members/associates. Defendant David Coke had 4 handguns at various locations tied to him. Defendant Sekou Williams had 3 handguns at his residence. None of these firearms were legally possessed.

---

1  Williams has been previously convicted of illegally possessing a firearm in 2005.
2  Whitehead has a prior conviction for illegally possessing a firearm.
3  Bloudson has a 2006 conviction for illegal possession of a firearm.

The Columbia Point gang has also made clear in public messages posted on the internet that it believes that cooperating witnesses ("rats") should be the subject of public disclosure and retaliation.  The government is prepared to submit videos involving Columbia Point gang members, including defendants Tony Berry and Antonio Chatman, openly discussing cooperating witnesses, disclosing their identities, and making it clear that they should be targeted for retaliation – in one of the videos defendant Chatman can be seen wielding what appears to be an AK-47-style assault rifle as part of the video targeting cooperating witnesses.[4]  *In two of the videos, Columbia Point gang leader Tony Berry displays written documentation (reports and grand jury materials) of alleged cooperation as a means of proving that certain individuals were cooperating and, thus, subject to retaliation.  In fact, in one of the videos, Tony Berry engages in an extended discourse on the type of documentation that is necessary to support the identification of a "rat."*  These videos make clear that the gang and its associates will use and disclose discovery materials as a means of furthering the gang's basic tenet that cooperators should be subject to intimidation and  retaliation.

Given the circumstances of this case, the proposed Protective Order is necessary to protect potential witnesses from intimidation and retaliation both on the street and if they are in custody.  As one district court has stated in support of imposing similar restrictions on the dissemination of discovery prior to trial:

> … Any lawyer with experience in the criminal justice system knows that copies of witness statements or other discovery are often passed from hand to hand within the

---

4  Two of these videos also include Vandell Woods, Tony Berry's half-brother, who is a Columbia Point gang member and is presently serving a sentence of imprisonment in New York based upon a double shooting committed by Woods in New York City.  Similarly, Tony Berry's brother, Willie Berry, who is also a leader in the Columbia Point gang and a defendant in this case, has convictions for assault with a dangerous weapon, assault and battery with a dangerous weapon, armed assault to rob, discharging a firearm, and illegal possession of a firearm.

> prisons. In particular, the wide dissemination of statements by cooperating witnesses who are regarded as "snitches" or "rats" by their criminal associates, and who often must serve their own sentences in close proximity to other prisoners, poses obvious dangers. It is not enough to say, as the defendants argue in this case, that the damage is done by the mere disclosure that a witness has cooperated with the authorities. Hard evidence of the witness's betrayal can facilitate retaliation or intimidation of the witness. It is therefore appropriate, in a case where such retaliation may be feared, to restrict the circulation of such material.
>
> Defendants argue that such restrictions should only be imposed on a showing of actual threats to Government witnesses by the defendants. But such evidence will often not be obtained, and by the time intimidation or retaliation against witnesses has occurred, the damage has been done. In this case, defendants are accused of repeated acts of violence, including murder, allegedly committed to further a narcotics distribution enterprise. In such cases, witness intimidation is always to be feared. It is thus appropriate to limit possession, circulation, and extraneous use of 3500 material [Jencks Act material] in cases of this kind.

*United States v. Garcia*, 406 F.Supp.2d 304, 306 (S.D.N.Y. 2005); *see also United States v. Scott*, 2008 WL 4372814 at *1 (M.D.Pa. 2008) (affirming use of protective order limiting dissemination of discovery materials) ("when the 3500 materials are provided to a defendant before required by the Jencks Act, careful restriction on the use of this material is warranted, considering the wide dissemination of 3500 materials within the prison system and the possibility that hard evidence of cooperation with the Government can facilitate witness intimidation or retaliation"); *United States v. Guerrero*, 2010 WL 1506548 at *13 (S.D.N.Y. 2010) ("judges in this District have granted motions by the Government along the lines proposed here, and have issued protective orders precluding defendants from taking 3500 material that discusses CWs and civilian witnesses into prison or keeping it with them in prison, or back to their home, as the case may be") (collecting several supporting cases). In *Guerrero*, the court further noted:

> Defendants have objected to the request for a protective order based on the fact that it will be less time-efficient and make the preparation of defense more costly. In light of

the balance of concerns for witness safety against those of efficiency, the protective order will issue.

*Id*.

In the case at hand, the same security concerns exist as discussed above. Even the defendants who are not members/associates of the Columbia Point gang are (1) linked to the gang in some fashion, including as drug suppliers, and (2) subject to intimidation by their co-defendants who are gang members to provide them with copies of discovery documents. Given all of the facts, the Protective Order filed with the Court is an appropriate means of protecting potential witnesses from the danger posed by the various defendants in this case.

The government's motion for a protective order should be granted.

                                                    Respectfully submitted,

                                                    CARMEN M. ORTIZ
                                                    United States Attorney

Date: July 17, 2015                      By: */s/ Michael Crowley*
                                                    MICHAEL CROWLEY
                                                    EMILY CUMMINGS
                                                    Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, Michael J. Crowley, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

                                                */s/ Michael J. Crowley*
                                                MICHAEL J. CROWLEY
                                                Assistant U.S. Attorney